Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Lewis. Mr. Mackey? Good morning, Your Honors, and may it please the Court. My name is Eric Mackey, and I represent the appellate, Mr. DeWayne Lewis. In this case, law enforcement officers violated Mr. Lewis' constitutional rights not once, but twice. First, they used a police detection dog to search his hotel room by sniffing at the cracks of his door without first obtaining a warrant. This Court's decision, as the magistrate judge concluded, in Whitaker, which the government asks the Court to overlook, is squarely on point and confirms that the evidence in question should have been suppressed as it was unlawfully obtained. Mr. Mackey, should we make something of a distinction between a hotel room in Whitaker and a motel room here? No, Your Honor, I think that that distinction does not make a difference. As the Court in Whitaker described, any privacy rights that the defendant had in the hotel room did not affect its decision. The key question in that case was whether the defendant had a privacy expectation in his apartment, which is the same question that we have here, whether the defendant had a privacy right in the hotel room. And the answer to both questions is yes. And in both instances, the police officers used a dog to search the room without obtaining a warrant. And on that basis, they violated the defendant's constitutional rights. Mr. Mackey, does any other, does any Court of Appeals support that approach? The United States Brief, in this case, says that every Court of Appeals that has considered the question has held that there is no search if a dog parades up and down the corridor outside a motel room. Is that statement correct? Well, it either is or it isn't. Well, it's not correct in so far as, unless we're excluding what the Seventh Circuit has said in Whitaker, because I think in Whitaker, that's the binding authority in this Court. But that wasn't a hotel room. That was an apartment. That's correct. So, to address my question. Sure. Has any circuit held that it is a search to parade a dog up or down in front of a hotel room? Any Court of Appeals? No. And quite a lot of those decisions, ones the government cites, obviously have distinguished situations like the front porch. So you're asking us to create a conflict among the circuits? I'm asking this Court to apply Whitaker, Your Honor. And create a conflict among the circuits? That would create a conflict. Whitaker is on point. I think Whitaker is very consistent with what the Supreme Court has said in decisions like Kylo, Florida versus Jardines, and the fact that we have Whitaker in this case, I think does bind this panel. Your Honor, the government suggests that Whitaker is in conflict with Supreme Court decisions. That's not true. I have one other important question about this case. The prosecutor observes that the district judge, in her opinion, convicting Lewis, expressly stated that this evidence made no difference whatsoever. I looked in your reply brief for a response to that, but there is no response. Is there any possible response? Yes, in the reply brief to that point is that the evidence alone of two witnesses that testified here is not enough to convict Mr. Lewis beyond a reasonable doubt. If you look at the cases the government cited, there is circumstantial evidence that's enough. That is, I must say, asking us to disagree with a district judge's credibility decision is completely lost on an appellate court. Oh, Your Honor, that's not what I'm saying. What I'm saying is even if you accept the fact that the district court said that those two witnesses were credible, that's not enough evidence to get us beyond the reasonable doubt, which is a very, very high standard. Why not? Because those were two key witnesses who engaged in the drug transactions with your client, and they had extensive testimony about his involvement. Your Honor, one of the witnesses wasn't even present on the day in question. A key element here is that the government has to show that Mr. Lewis possessed the drugs. One of the witnesses that testified, let alone, you know, the fact that they were testifying pursuant to deals with the government, he was not present on the day in question. But they were there when he was moving the drugs from the prior location to the motel. Right, that was the testimony of one of the witnesses who was not present. But he was there when the defendant was at the location in Indiana getting the materials out of the storage space and taking it. Why, why wouldn't that be sufficient? That was the testimony of one of the witnesses, Your Honor. If you look at the, if you look at the cases the government cited, you'll see that there is witness testimony, but that testimony is supported by corroborating evidence. And that corroborating evidence is crucial, and it's absent here. The only thing that you have is two witness testimonies. If you look at Lee, for example, in that case there is testimony from witnesses, but in addition to that, there's corroborating evidence. You have the defendant on recorded phone calls. You have him admitting that that was his voice when he made drug deals. That evidence is completely lacking here. I think in one of the cases the government cited, U.S. versus Gomez, one of the That kind of corroborating evidence is not here. There were five witnesses who said the defendant was guilty, and they were not related to the criminal activity at all. The circumstances here are very, very different. What about the text messages between Lewis and Bates that talked about the quality and actually the quantity of the drugs? Why wouldn't that be sufficient corroboration? Your Honor, I think that that shows, you know, at some point Mr. Lewis was involved in this criminal conspiracy. On some day, perhaps Mr. Specifically, those, sorry to interrupt, those text messages specifically talk about the quantity of drugs stored at the barn location. And it's the government's theory that it's those drugs that ended up at the hotel, and the quantity is essentially the same. So why wouldn't that be sufficient corroboration to the extent that corroboration is needed? Your Honor, I think that I think it's certainly appropriate for the district court to consider that kind of evidence. The reasonable doubt standard is the highest standard in criminal proceedings. And our position is that if you look at the cases the government cited in support, those do not establish that the evidence here was sufficient. What about the ledger? When you add that on top of the text messages that showed large payments from Bates, who was the head of this organization, to your client? And, Your Honor, I think I agree that that shows that my client was probably involved in this criminal conspiracy. But here he was charged with possession of the drugs in question. And the government has to show that they meet that element beyond a reasonable doubt. And showing that Mr. Lewis was generally involved in a criminal conspiracy does not do that. So a couple of other points that I wanted to address was the government suggests that the key question here is whether Mr. Lewis had an expectation of privacy in the hallway. That is not the question. The key question here is whether Mr. Lewis had an expectation of privacy in his hotel room that was violated. The decisions the Supreme Court decided in Kylo and in Florida v. Jardines answers this question. In Kylo, there was no physical intrusion into the house. The police officers used a heat detection device from a public street. And the Supreme Court in that decision held that the defendant's privacy expectations in his home were violated, despite the fact that there was no physical intrusion. Do you agree that he doesn't have any, that the area outside of his hotel room does not have the same constitutional protections that the porch or an area immediately outside of a home considered cartilage would have? Your Honor, I think that that is probably a supportable proposition, but I don't think the court has to decide that question. Why? Because Mr. Lewis was in his hotel room, and this court has said that the inside of a hotel room has the same Fourth Amendment privacy protections as the inside of the house. But the dog was sniffing outside in the public area of the hotel room. Yes, that's correct. The dog never physically intruded into the hotel room. But if you look at decisions like Kylo, I think the Supreme Court has made clear that the fact that the dog is an enhanced sensing device, the dog allowed the government to observe something that they could not observe with their own five senses. I don't understand why you're not arguing, therefore, that using a dog is always a search. Suppose the dog comes up to somebody in a train terminal and alerts to drugs that are being carried by the suspect in his pocket. The police would need a warrant to search his pocket, but the Supreme Court says the aroma detected by the dog is not a search at all. That doesn't seem consistent with the approach you're asking us to take. Your Honor, respectfully, I don't think that that's the position that the Supreme Court took in Florida v. Jardines. In fact, in the dissent, Justice Alito made that argument. That was the point that he said, and that was squarely rejected by the majority. The Supreme Court has walked away from the language that they used in Cabellas and Weiss. So you think we should just ignore all of the Supreme Court cases holding that the use of a drug detecting dog is not a search, because they're all wrong. I think that, again, that the Supreme Court in Florida v. Jardines, the majority squarely rejected that argument that Justice Alito made in his dissent. I think if you look at this court's... I'm not referring to arguments made by Justice Alito in dissent. I'm referring to holdings of the Supreme Court that use of a drug detection dog is not a search. You think, I think it is the implication of your argument that we should ignore all of those decisions because they're all wrong. That's not the implication of my argument, Your Honor. Then explain to me how it is possible to say that it is not a search when a dog comes up to someone in a train station and detects an aroma coming from that person's pocket, a place within his zone of privacy, and which cannot be searched without a warrant. Your Honor, it is a search. The question is whether the search violates... But the Supreme Court has held that it is not a search. That's why I say you appear to be asking us to ignore quite a few decisions of the Supreme Court. And I must say they're a very jealous institution. They say that judges of other courts, the Constitution calls us inferior courts, must follow their decisions until they overrule them. We can't say, well, you know, we think they're bad. We're not following them. The majority of Florida v. Jardines, Your Honor, said that using a dog is a search. The Supreme Court has been very, very clear about that. This protection, which is why I asked you earlier, would the outside... Is your argument that the outside of this motel room is entitled to that type of constitutional protection? And no court has held that. I agree that in Florida v. Jardines, that was on the home. But the Supreme Court did say that the use of a dog was a search. So that opinion does get us there. On the curtilage, which takes that outside of the case here. I agree that that was a property rights case. And here we're talking about reasonable expectations of privacy. Mr. Mackey, before any rebuttal time, one question concerning the tracking order. Did the judge that granted the tracking order have any information about the informant? I think the name is Boyle. The only thing that the judge knew was that Boyle had said that Mr. Lewis was connected to this phone number that the police officers were interested in. That was the only information about the informant that was provided to the judge that issued the tracking order. Thank you. And on that point, Your Honor, and I'm sorry, it looks like, you know, maybe I have another minute and a half that I'd like to save. Certainly. Okay. Thank you. Mr. Heller. Thank you. Good morning, Your Honors, and may it please the court. This court should affirm the judgment. I would agree with this court that under this court's precedence after a bench trial, the court will not reverse a conviction when there was ample other evidence and the district court judge made clear that she would convict regardless. Both of those prongs are met here. The defendant has not asked you to overrule Lee, and I think therefore that decision binds this court. I would just point out that if we had walked into Judge Springman's courtroom, dumped the drugs from the Southern District of Indiana on the table and walked out, she should have acquitted because that's not what the defendant was charged with. The defendant was charged with possessing the drugs on February 1st in Butler, Indiana, in the Northern District of Indiana. He was charged with the drugs in the secret room in the barn. And the direct evidence, the most direct evidence we had of that was that Bates told him to go pick up 20 kilograms of drugs that was in the barn, and Cook went with him and saw him pick up all and that he then put them in some suitcases that he bought at Walmart and he drove them away. Now, the fact that two days later he showed up in the Southern District of Indiana with 19 kilograms of cocaine was certainly great evidence to support that testimony. But as Judge St. Eve pointed out, we also had ledgers showing that Knapp was part of the organization. We also had text messages back and forth between Bates and Lewis talking about, in cryptic language, but certainly in context, talking about going there and, hey, there's not 20, there's only 19, and various other things like that. There was more than enough evidence. And Bates testified about those text messages, correct? Yes. What he understood the code to mean. He interpreted them as to what they meant. Yeah, I mean, they don't use, in all the drug lingo, they're just talking in 20, Lewis, 19 of that, whatever. But it's all in the record, and it amply supports the district court's point. Even without any of that, I mean, this court has always said you can believe someone. If Judge Wood testifies to you that she saw me dealing drugs outside of the courtroom, you're allowed to believe her, even if she doesn't present a word of corroborating evidence. You don't have to believe her, but if you do, you can convict me. There doesn't have to be corroborating evidence. There just has to be ample evidence. And there was ample evidence here. To the extent the court wants to reach the Fourth Amendment issue in this case, we believe the court should join all of the other courts. Judge Easterbrook, you were correct. The Eighth Circuit, in a published opinion, the Third and the Fourth Circuit, in unpublished opinions, have all said that motel rooms lack heritage. There's no search. There's no Fourth Amendment violation when you run a drug dog up and down the hallway. No state court of highest resort has said that. So you would be, again, creating a circuit split, and I don't think you need to do that here. There was nothing within the curtilage here, and even if we don't call it curtilage, people have more rights in the areas outside of their apartment than they do outside of a hotel room. You might put a doormat, or you might put a cross or a masseuse on the doorpost of your house. You wouldn't do that in a motel room, whether it's the Red Roof Inn or the Four Seasons. It's a temporary lodging. It's a temporary abode. People absolutely have rights to privacy in hotel rooms. They also have rights to privacy in cars. They also have rights to privacy in their pockets. People have more right to privacy in their apartments than they do in hotel rooms. And that wouldn't be inconsistent with Whitaker, would it? Because Whitaker, I know it was an apartment, but we didn't hold there that the area outside of the apartment, the hallway, was curtilage. I mean, I agree with my opponent that you didn't hold that the area outside of an apartment is curtilage, but the panel did talk about that you have a right to expect that you've got some interest of privacy in that area. You have an expectation that people aren't going to set up chairs outside of there and do those kinds of things. I mean, at times in my life, I've stayed in cheap budget motels like the Red Roof Inn, and I'm not sure I have an expectation that people aren't going to be loudly running up and down those halls and doing all kinds of things, and I don't have much right to exclude them. I don't have any personal property rights to call the cops and get them out there. Maybe I can throw myself on the mercy of the host health staff, but considering what they're paid, I don't know that I'm going to get much. I feel like I have a lot more expectation that people aren't going to set up chairs outside my house now or the condo I once had in Chicago. Far more rights. The court can easily distinguish that on that basis. I mean, yes, people have rooms, et cetera, and courts often shorthand that to just say, yeah, you have the same expectations of privacy. Well, for the purposes of can I barge into your hotel room, yes, you have the same expectations of privacy as can I barge into your house, but all Stoner versus California says is, you know, the motel owner can't give a consent to search your room. Well, that's true, but Kurt's can't give consent to search my car when I rent a car from them, and yet we know from Illinois versus Cabalas that dogs can sniff around a Hertz rent-a-car any time they want. So that doesn't distinguish the case, and I think if you look at what Jardines actually says, it is a property-based approach. It doesn't take a privacy approach, and so nothing in Whitaker's privacy approach requires you to extend anything from the apartment context to the hotel room context, and I would suggest to the extent the court wants to reach the issue, it should say that. You know, and we have other arguments as well I don't think we need to get into, but I do think are inevitable discovery arguments the district court ruled on, and I don't think there was clear error in that. I also think at minimum this search that was conducted after Gutierrez said it's permissible to use a dog sniff and to enter curtilage as long as you do those things separately. I just think any officer at the time would have thought that this was fine, so even if some later court someday says it's not, why would we apply the exclusionary rule to an officer's very reasonable interpretation of where this court's precedent was in February of 2015? Turning to the 2703D order, Your Honor, I think it's key to keep in mind that at the time the standard was were there reasonable grounds to believe that the phone location was relevant and material to an ongoing criminal investigation. That was the standard in 2015, and until Carpenter came along in 2018 and said no, you need probable cause, we didn't have to put all kinds of information establishing why the informant was a good informant. He was. He provided tons and tons of reliable information to us. He made a mistake here, but he had provided lots of reliable information. If we'd known we needed to put that in, we would have, which is what we would do today, but at the time, we were doing a quick investigation. We had a massive drug dealer who'd gotten in a car chase and had fled, who we knew was somewhere on the Texas-Mexico border, and we were trying to find him, and we were also trying to find this guy who appeared to be one of his top henchmen who was helping him and was trying to either help the informant because they thought that he was another person in the wind, or maybe were trying to lure the informant in so they could something to him. So we needed to find this guy. We had reasonable grounds, based on the information that we knew at the time, to believe that finding his phone location would be relevant to an ongoing criminal investigation. Mr. Howler, the 2703 order asked for both historical cell site information as well as real-time data. Is there any evidence that any of the historical cell site was used for any purpose during this trial? It seems like it was just the real-time. Yeah, none of it came in at trial, so I don't think it was used for any purpose. It certainly wasn't used for any purpose in Mr. Lewis's prosecution, whether it was used for spinoff investigations, I don't really know on that. But not in this particular situation? No. Nothing was introduced at trial? No, the evidence introduced, because again, I mean, this just feeds right back into the first point. At trial, we had to prove that Lewis took those drugs from that pole barn in Butler, Indiana, in the Northern District of Indiana. That's what we had to prove. So that was the focus of the case. And all of the testimony from Bates and Cook and the text messages and the drug ledgers, and Boyle's testimony as well, that he knew Knapp, he knew Lewis, he had met him, he had heard his role in the organization, that was the bulk of the evidence. And then, okay, two days later, he has the drugs in Indianapolis. I mean, yeah, that was very helpful evidence to us. I'm not going to deny that. But we didn't care where he was otherwise. My point is more if Carpenter applies to historical cell site, not to real time. Oh, right, right. Yeah. And what this court said in Hammond, the short bit of real-time information that we obtained here, I mean, I guess it's arguably slightly more than we obtained in Hammond, but it's not a lot more. So I think we're still in sort of the gray area of at what point have you sort of interfered enough in a person's life in tracking them. All we really knew here is we turn the thing on, and he's in Greenwood. And then it goes off, and it's off for a bunch of hours. And then at some point, it goes back on. I guess since I just have time, we briefly believe that the district court correctly applied Maryland versus Garrison here. At the time that the government realized that there was something wrong with the 2703D order, they were no longer relying on it. At that point, they had already identified the Red Roof Inn, and they could continue to sort of go forward with the evidence that they had. They couldn't continue to use the 2703D order without going back to the district court. But I think to the extent that the defendant's argument is we suddenly had to freeze everything in place, and we couldn't do anything else on our investigation until we emailed Sprint and said, don't send us this stuff anymore, I don't think there's any support for that in the law. We weren't executing the order. Mark Hess's testimony in the time and ask simply that the judgment be affirmed. Thank you. Thank you, counsel. Mr. Mackey, anything further? Yes, Your Honor. I'd like to just address a few points that the government made. Starting with the 2703D order, even if the court doesn't reach whether the correct standard is reasonable grounds or probable cause that was required to get the order, what is clear here is the government realized while executing that order that they misidentified Mr. Lewis, that they gave the issuing judge incorrect information, and that the warrant itself was based on that incorrect information. And so the law does establish that the government was required to stop executing that warrant, to return to the magistrate judge, and to let the magistrate judge know that the information they provided as the basis for reasonable grounds or probable cause was inaccurate, and they failed to do that. But they asked this court to give the government the benefit of the doubt. Good police work and good luck is what led the police officers to the red roof end. And although the record shows that they continue to receive information from Sprint throughout the day, they asked the court to give officers the benefit of the doubt and to assume that the officer testified that he did not rely on that information. But at the suppression hearing, the magistrate judge did not make any credibility determinations about that. And so on that basis, Mr. Lewis's Fourth Amendment rights were violated. It looks like I'm out of time. Thank you, Your Honor. Thank you, Mr. Mackey, and we appreciate your willingness and that of your law firm to accept the appointment in this case. The case is taken under advisement.